## COHEN v. HUTCHINS et al.

## MERILLAT et al. v. COHEN.

Court of Appeals of District of Columbia.
Submitted February 4, 1929.
Decided April 1, 1929.

Nos. 4709, 4710.

Frank J. Hogan, of Washington, D. C., for trustee Cohen.

John E. Laskey and Wm. G. Johnson, both of Washington, D. C., for trustee Merillat and others.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. These appeals involve litigation growing out of the final settlement of the estate of Stilson Hutchins. William J. Dante held the legal title to all the Hutchins estate, as trustee, under a deed from Hutchins and wife dated March 7, 1910. He had been engaged since November 13, 1911, in administering the trust under the direction of the equity court. On March 29, 1924, Dante, as trustee, received from Wardman, Bones & Hobbs an offer to purchase certain real estate belonging to the Hutchins estate, known as the Highlands-Westmoreland property. The offer, hereafter referred to as the "Wardman offer," concluded as follows: "The sellers agree to pay the sum of thirty-six thousand dollars ($36,000) jointly to Z. M. Knott and the Wardman Construction Company as compensation for services rendered in negotiating this sale." The "Wardman offer" was submitted to the beneficiaries interested in the Hutchins estate, and accepted by all excepting Walter Hutchins.

In May, 1924, the parties interested in the estate of Hutchins, which had gone through a series of litigation in the courts of the District of Columbia extending over a period of twelve years, opened negotiations for the settlement of their respective interests in the estate. A proposition of settlement was submitted by Rose Keeling Hutchins, wife of Stilson Hutchins, deceased, which, among other stipulations, contained the following: "(c) Conveyance of all property to three trustees under deed in trust. (e) Trustees to be appointed by the parties as follows: One by Mrs. Hutchins, one by Walter Stilson Hutchins, and the third by Miss Mildred Rogers and Mr. Lee Hutchins."

An agreement was finally reached whereby all the property, real and personal, belonging to the estate was conveyed to the following three trustees: Thomas Morton Gittings, selected by Rose Keeling Hutchins;

Charles H. Merillat, selected by Walter Stilson Hutchins; and Myer Cohen, selected by Mildred Rogers Penn and Lee Hutchins. It was stipulated in the agreement that in the event of the death, disability, resignation, or removal of any one of said trustees, the party designating such trustee should have full authority to appoint a successor, and should also have power to remove the trustee by him or her designated. The agreement further provided that the trustees should, as speedily as possible, sell all the real estate and distribute the net proceeds in equal shares among the beneficiaries, Mrs. Hutchins, Mildred Rogers Penn, Walter Hutchins, and Lee Hutchins.

When the negotiations for settlement were opened, Mrs. Hutchins made it a condition precedent to any settlement that the "Wardman offer" should be put through, and in order to procure the agreement Walter Hutchins gave his assent to the acceptance of the "Wardman offer." Dante conveyed the property to the trustees, and the "Wardman offer" was redrafted to run to the new trustees instead of Dante. The settlement agreements were not finally signed until May 19, 1924, and on May 24th Wardman submitted the redrafted offer and gave the purchasers 90 days after acceptance within which to settle. The terms of the redrafted offer were in all particulars the same as the original offer, excepting it ran to the new trustees instead of to Dante. The sale was closed on August 18, 1924, and the net proceeds of sale, cash and deferred payment notes, were distributed by the trustees to the several beneficiaries, one-fourth to each. On November 5, 1924, Lee Hutchins died testate, having devised and bequeathed his entire estate to his niece, Mildred Rogers Penn. She thereby became the owner of a one-half interest in the proceeds of the estate, and, as such, was the owner of $350,000 of deferred purchase-money notes derived from the sale to Wardman.

This bill was filed on November 19, 1925, by Merillat, trustee, and Walter Hutchins, one of the beneficiaries, all other parties in interest refusing to join in the bill. The trustee, Gittings, and the other beneficiaries of the trust, were made parties defendant with Cohen.

It appears that the sale to Wardman was negotiated by Knott, who was connected with the firm of Tyler & Rutherford, real estate brokers. On April 26, 1924, Wardman announced the withdrawal of the original "Wardman offer," because of the objection by Walter Hutchins to the amount of the brokerage commission; and Knott, fearing that the sale would not be completed and he would lose his commission, enlisted the services of Cohen to intercede with Wardman to hold the offer open. This Cohen did. He succeeded on May 3, 1924, in securing the assent of Wardman to the revival of the offer. Later, when the negotiations leading to the settlement and appointment of the trustees was pending, it was suggested that the "Wardman offer" should be redrafted to run to the new trustees. This was done, and prior to the appointment of the trustees for the completion of the settlement, the amended offer was accepted by the beneficiaries in writing as follows:

Washington, D. C., May 16, 1924.

"Whereas, a written offer has been submitted by Harry Wardman, James D. Hobbs and Thomas Bones for the purchase of the Highlands and the Westmoreland, and the lot adjoining the Westmoreland on the West, it is hereby agreed by the undersigned that unless a better offer for the property be obtained on or before May 20, 1924, that the said offer be accepted.

"Mildred Rogers Penn.
"Walter Stilson Hutchins.
"Lee Hutchins.
"Rose Keeling Hutchins."

When the commission was paid, and a check for $18,000 (one-half the total commission) was delivered by Cohen to Knott, he suggested to Knott the payment of his fee for services rendered him in negotiating with Wardman. Some dissatisfaction was expressed on the part of Knott, which is not here material, as he is not a party to this action, but it resulted in the payment to Cohen of the sum of $2,000 as a fee for his services rendered in the case. A portion of this was paid by Knott, and a portion of it by Tyler & Rutherford, with whom Knott divided his share of the commission. This likewise is unimportant.

The acts of malfeasance charged against Cohen, trustee, are that he and Dante coerced Knott into paying Cohen out of his commission $2,000; that in the sale of what is known as Convention Hall by the trustees, Cohen made unreasonable fire insurance exactions at the expense of the purchasers upon the improvements on the real estate pledged as security for deferred purchase money; and that Cohen, as the personal attorney of Mildred Rogers Penn, sold her deferred purchase-money notes from the sale of the Highlands-Westmoreland property at an excessive discount, thereby causing her a substantial loss.

Mrs. Hutchins answered the bill, denying

knowledge of the averments therein, and adding "that she wishes to state, however, that she greatly deprecates the filing of said bill." Gittings, trustee, filed no answer, and a decree pro confesso was entered against him. Defendant Mrs. Penn answered fully, replying to the various allegations of the bill, opposing the relief prayed, and praying the retention of defendant Cohen as trustee. Cohen likewise answered the bill fully. This left Merillat and Walter Hutchins as the only parties plaintiff.

From the decree ordering Cohen to pay over to the trustees the sum of $2,000, being the amount received by him from Knott, the appeal in No. 4709 is prosecuted; and from the decree denying the prayer of the bill that Cohen be disqualified from further acting as a trustee, the appeal in No. 4710 is prosecuted.

■ It will be observed that the contract of sale in this case was made by the beneficial owners themselves. The original "Wardman offer" was submitted to Dante, the trustee, and accepted in its modified form by the beneficiaries themselves at a time before the trustees had been appointed. By this acceptance they agreed to the amount that should be paid Knott; consequently this amounted to a fixed obligation against the trust estate which came into the hands of the trustees. It was an obligation which the trustees were required to discharge. By the payment of the money to Knott, the net trust estate was not depleted to any extent whatever. When the money passed to Knott it became his personal property, and the estate, or the beneficiaries under the estate, had no claim against it, and it is not clear just how the estate could now claim the return of any portion of the money decreed to be paid by Cohen.

The service was performed by Cohen prior to the appointment of the trustees. It was a personal service performed for Knott and not on behalf of the estate. The $2,000 was paid Cohen for his services. It was a transaction entirely between Knott and himself of which Knott has made no complaint. Cohen should not be required to pay into the trust estate the results of this private transaction between himself and Knott. Cohen, when he rendered the service for Knott, was not then a trustee. It does not appear that he had even notice that he would be selected as a trustee. Indeed, the proposition of Mrs. Hutchins, who was not even Cohen's client, for the appointment of trustees, had not been made at this time. If Cohen's fee had been paid by Knott on May 3, 1924, when the service was completed, it could not be said that because of the subsequent creation of the trust Cohen could under any rule of equity or justice be compelled to pay his fee into the trust estate. If he could not, the mere fact that he delayed presenting his bill to Knott would not change the situation.

But it is contended that the redrafted "Wardman offer" which was directed to the trustees was a separate and distinct transaction from the original offer which Wardman had terminated, but which had been renewed through the efforts of Cohen on Knott's behalf. We are not impressed with this contention. It was a single transaction. It was the original offer which Mrs. Hutchins made a condition precedent to the creation of the trust and the appointment of trustees, and it was the original "Wardman offer" that was accepted as a condition of the execution of the settlement deeds. If this offer had not been alive and capable of acceptance, the deeds would have been a fraud upon Mrs. Hutchins, for the acceptance of the offer was her condition for executing the deeds. The acceptance finally of the offer by the beneficiaries was therefore the act of the beneficiaries themselves. They sold the property. They agreed to the amount of the commission to be paid and to whom it should be paid. This was an obligation resting against the estate when the trustees assumed their duties. When the beneficiaries signed the acceptance, they signed away all interest in the amount therein involved. It is difficult to understand, after the obligation has been discharged and the money paid to the parties entitled to it, upon what theory Walter Hutchins or his trustee can assert any equitable or legal claim therein.

■ This brings us to the charge contained in the bill that Cohen induced Mrs. Penn to dispose of promissory notes in the sum of $350,000, derived from the sale of the Highlands-Westmoreland property, at an excessive discount. It appears that these notes to the amount of $175,000 were received by Mrs. Penn as her share in the distribution of the proceeds of the sale by the trustees. She subsequently received notes in a similar amount as the sole legatee under the will of her uncle, Lee Hutchins, who had previously received them from the trustees as his portion derived from the sale of the same property. Mrs. Penn, in her answer to the bill, alleges that in this transaction Cohen acted as her attorney, and the sale was made with her full approval. The notes distributed to Mrs. Penn and those inherited from her uncle were her property with which she could

do as she pleased. If she saw fit to give them away, it was no concern of Walter Hutchins or his trustee.

The trustees in the handling of this estate were not only general trustees, but they each occupied a special fiduciary relation to the particular beneficiary by whom he had been chosen. Not only did the beneficiary reserve the right to discharge the trustee selected by him and to substitute another if deemed advisable, but the contract under which the trust was created and the trustees appointed was based upon this personal relation. The trust estate was not one in the hands of the court with trustees appointed by the court and directly responsible to the court, with compensation to be paid for their services out of the trust estate. The trust was created by the beneficiaries under a contract, each beneficiary selecting his own trustee to represent him in carrying out the trust, and the deed further stipulated that: "The compensation of each trustee shall be paid wholly by the beneficiary whom he represents and not out of the estate hereby conveyed."

It will be observed that no action by the court was necessary to terminate the trusteeship. It was of such a personal character that when the proceeds from the sale of a certain property was distributed among the beneficiaries, the trusteeship as to that portion of the estate was terminated. This was the situation in regard to the notes in question. They were the individual property of Mrs. Penn, no longer a part of the estate, or connected with the trust. Hence she alone could be heard to complain of the conduct of Cohen in this particular transaction.

Cohen's action in the insurance matter growing out of the sale of Convention Hall was in the interest of the trust estate. It was acquiesced in by all the parties. Merillat testified: "I told the purchasers that if it was satisfactory to them, it was satisfactory to me." The insurance was necessary for the protection of the estate. It was paid for by the purchasers, who are not here complaining. The court below was right in ignoring this testimony as ground for the discharge of Cohen from his trusteeship.

We must not be understood as holding that the mere indifference or opposition of beneficiaries or trustees can defeat the right of one who seeks the removal of a trustee who has been guilty of misconduct in the discharge of his duties, but we think that there is no such legal incompatibility of interest here shown between the transactions of Cohen and the trusteeship as are usually condemned where the trustee places himself in a position of receiving benefits from funds which he has personally been instrumental in paying out of the trust estate. The court below therefore was in error in holding that the $2,000 paid by Knott to Cohen was "a profit which he made as trustee out of the trust estate." It came to Cohen through a private transaction between him and Knott, and independent of any connection with the management of the estate.

So much of the decree as is appealed from by Myer Cohen, trustee, is reversed, with costs, and so much of the decree as is appealed from by Charles H. Merillat, trustee, and Walter Stilson Hutchins, is affirmed, with costs, and the cause is remanded for further proceedings, not inconsistent with this opinion.